UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CORY GRAY,<br><br>    Plaintiff,<br><br>    v.<br><br>LARRY CRITTENDON, et al.,<br><br>    Defendants. | CAUSE NO. 3:19-CV-579-JD-MGG |

OPINION AND ORDER

Cory Gray, a prisoner without a lawyer, filed an amended complaint (ECF 8) against sixteen defendants. A filing by an unrepresented party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Gray, who is currently housed at the Wabash Valley Correctional Facility, alleges that, on June 21, 2019, when he was getting ready for a court appearance, he became dizzy and collapsed in his cell after being on a hunger strike and refusing to drink liquids for five days. (ECF 8 at 3.) He claims he was unconscious in his cell and awoken after he had difficulty breathing and vomited in his mouth. (*Id.*) Gray states that Lieutenant Larry Crittendon deployed OC spray into his cell while he was lying

unconscious on the floor. (*Id*.) He alleges that other inmates housed near him told him that Lieutenant Washington, Officers Ulayi and Thomas, and Sergeant Reed stood at the window of his cell and did not attempt to prevent Lieutenant Crittendon from deploying OC spray into his cell. (*Id*.)

Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Giving Gray the inferences to which he is entitled at this stage, he states a plausible Eighth Amendment claim of excessive force against Lieutenant Crittendon for deploying OC spray on him while he lay unconscious in his cell.

To the extent Gray alleges that Lieutenant Washington, Officers Ulayi and Thomas, and Sergeant Reed did not prevent Lieutenant Crittendon from spraying OC into his cell, state actors "who have a realistic opportunity to step forward and prevent a fellow [state actor] from violating a plaintiff's right through the use of excessive force but fail to do so" may be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir.2000) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Here, it cannot be plausibly inferred that Lieutenant Crittendon's alleged use of excessive force—a two second blast

2

of OC spray—lasted sufficiently long for the defendants to intervene. (ECF 8 at 4.) Also, other than alleging that the defendants were near his cell, he does not explain why he believes they had an opportunity to intervene on his behalf. Therefore, Gray has not stated a claim for failure to intervene against these defendants.

Additionally, to the extent Gray asserts that Lieutenants Crittendon and Washington, Officers Ulayi and Thomas, and Sergeant Reed did not notify the medical staff that he had a medical emergency while he was lying unconscious in his cell, under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). Giving Gray the inferences to which he is entitled at this stage, he states a plausible Eighth Amendment claim of deliberate indifference to his serious need for medical treatment against Lieutenants Crittendon and Washington, Officers Ulayi and Thomas, and Sergeant Reed.

Gray next claims that, after he vomited in his cell, Lieutenant Crittendon told him to put on his contaminated boxer shorts and proceed to the cuff port or he would leave for ten minutes and let Gray suffer in his contaminated cell. (ECF 8 at 4.) After complying with Lieutenant Crittendon's order, he was cuffed, "snatched out of [his] cell," and thrown to the floor. (*Id*.) Lieutenant Crittendon then pointed a taser at him and said, "Twitch and I'll shoot you. Please give me a reason!" (*Id*.) Gray states he was next dragged down a flight of stairs and carried to a holding cell. (*Id*.) Lieutenant Crittendon then said, "You are lucky I only gave you a [two] second blast instead of the [four] second blast that I wanted to give." (*Id*.) Gray claims that Lieutenant Crittendon stated he had seen the video of Gray's altercation with Officer August Crawford and he wanted to give Gray what he had coming to him and it was a "pity that [Gray] had not given him the excuse to tase [Gray]." (*Id*.) Gray's allegations that Lieutenant Crittendon threw him to the floor and dragged him down a flight of stairs also state a claim of excessive force.

Next, Gray states that he was left in the holding cell for several hours before he was allowed to take a shower and wash off the OC spray. (ECF 8 at 4.) After he saw Officer Ross give another inmate a towel and new boxer shorts, he asked for these same items, but Officer Ross declined his request. (*Id*.) He claims he was then forced to wear his contaminated boxer shorts. (*Id*.) A few hours after he was placed in the holding cell, Nurse Mossiere checked his vital signs and told him he was fine. (*Id*.) Gray told Nurse Mossiere that his body was burning from the OC spray, but she told him she could not provide him with any medical assistance. (*Id*.)

4

About eight hours later, Gray was returned to his cell with nothing except for his boxer shorts, which he claims were still contaminated. (ECF 8 at 4.) He alleges that his property, including his mat and linens, had been removed from his cell. (*Id*.) Officer Thomas told Gray that he had been placed on strip cell status for seven days and he was assigned to periodically observe him. (*Id*. at 5.) Gray claims he lay unresponsive and naked in his cell, but Officer Thomas refused to notify medical staff. (*Id*.) He states that Sergeant Guitierez and Officer Walters gave him a mat and blanket that were contaminated with OC spray. (*Id*.) Gray claims that he was never given any cleaning supplies to decontaminate his walls, door, sink, toilet, bed frame, desk, floor, or mat, and when he slept on his mat, he felt a burning sensation from the OC spray. (*Id*.) He notified Sergeant Guitierez and Officer Walters about these issues; however, they told him Lieutenant Palmroy said that Gray "had made [his] bed and now [he] must lay in it since [he] was a tough guy who beats [up] officers." (*Id*.) Gray claims that he was left in his contaminated cell for seven days with no towel or soap and was not allowed to shower or brush his teeth. (*Id*.) He claims the nursing staff refused to treat him during this period. (*Id*.) Gray also asserts that, on June 24, 2019, he asked Officer Ross for a new mat and clean blanket and sheets, but she refused to give him these items because he was on strip cell status. (*Id*.)

In sum, Gray asserts that Lieutenants Crittendon, Washington, and Palmroy, Sergeants Reed and Guitierez, Captain Smiley, UTM John Salyer, and Officers Ulayi, Thomas, Ross, Walters, Harris, Parker, and Henrich were aware that he needed clean clothes, linens and a mat, but they refused to give him these items. (ECF 8 at 5.) He

5

claims he was subjected to seven days of "hellfire" as a result of Lieutenant Crittendon deploying OC spray on him and the defendants refusing to provide him with cleaning supplies as well as a new mat, blanket, sheets, towels, and boxer shorts, all in retaliation for allegedly assaulting Officer Crawford. (*Id*. at 5-6.)

In evaluating an Eighth Amendment conditions of confinement claim, the court conducts both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" so that "a prison official's act results in the denial of the minimal civilized measure of life's necessities." *Id.* Inmates are entitled to be provided with adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). However, "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and inmates cannot expect the "amenities, conveniences, and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650 (7th Cir. 2012) ("Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment."). Giving Gray the favorable inferences to which he is entitled at this stage, he states a plausible Eighth Amendment conditions of confinement claim against Lieutenant Crittendon for not giving him clean boxer shorts, Officer Ross for refusing to give him a new mat, blanket, sheets, towel, and boxer shorts, and Officer Walters, Sergeant Guitierez, and Lieutenant Palmroy for refusing to give him a new mat and cleaning supplies.

To the extent Gray alleges that Lieutenant Washington, Sergeant Reed, Captain Smiley, UTM John Salyer, and Officers Ulayi, Thomas, Harris, Parker, and Henrich were aware or knew he needed clean clothes, linens and a mat, but refused to give him these items, he has not explained how they were personally involved or participated in the alleged incident. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). In other words, "[p]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Therefore, Gray cannot proceed against these defendants on his conditions of confinement claim.

Furthermore, Gray assets that Nurse Mossiere refused to provide him with medical treatment after he told her his body felt like it was burning from the OC spray. (ECF 8 at 4.) For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Accepting Gray's allegations as true and giving him the benefit of the inferences to which he is entitled, at this stage of the proceedings, he has alleged facts from which it can be inferred that Nurse Mossiere was deliberately indifferent to his serious need for treatment.

Finally, Gray claims that Lieutenants Crittendon and Palmroy, Officer Nash, and the defendants in this case retaliated against him because they dislike offenders who assault commanding officers. (ECF 8 at 6.) "To prevail on his First Amendment

7

retaliation claim, [Gray] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Because Gray has not alleged he engaged in protected activity, he cannot proceed on his retaliation claim.

For these reasons, the court:

(1) GRANTS Cory Gray leave to proceed against Lieutenant Larry Crittendon in his individual capacity for nominal, compensatory, and punitive damages, for using excessive force against Cory Gray when he deployed OC spray on him while he lay unconscious in his cell, in violation of the Eighth Amendment;

(2) GRANTS Cory Gray leave to proceed against Lieutenant Larry Crittendon in his individual capacity for nominal, compensatory, and punitive damages, for using excessive force against Cory Gray when he threw him to the floor and dragged him down a flight of stairs, in violation of the Eighth Amendment;

(3) GRANTS Cory Gray leave to proceed against Lieutenant Larry Crittendon, Lieutenant Washington, Officer Ulayi, Officer Thomas, and Sergeant Reed in their individual capacities for nominal, compensatory, and punitive damages, for being deliberately indifferent to his serious need for medical treatment while he was lying unconscious in his cell, in violation of the Eighth Amendment;

(4) GRANTS Cory Gray leave to proceed against Nurse Mossiere in her individual capacity for nominal, compensatory, and punitive damages, for being

8

deliberately indifferent to his serious need for medical treatment after he felt like his body was burning from OC spray, in violation of the Eighth Amendment;

(5) GRANTS Cory Gray leave to proceed against Lieutenant Larry Crittendon, Officer Ross, Officer Walters, Sergeant Guitierez, and Lieutenant Palmroy in their individual capacities for nominal, compensatory, and punitive damages, for failing to provide him with adequate clothing, bedding, and hygiene materials, in violation of the Eighth Amendment;

(6) DISMISSES Captain Smiley, UTM John L. Salyer, Officer Harris, Officer Parker, Officer Henrich, and Officer Nash;

(7) DISMISSES all other claims;

(8) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Lieutenant Larry Crittendon, Lieutenant Washington, Officer Ulayi, Officer Thomas, Sergeant Reed, Officer Ross, Officer Walters, Sergeant Guitierez, and Lieutenant Palmroy at the Indiana Department of Correction with a copy of this order and the amended complaint (ECF 8), pursuant to 28 U.S.C. § 1915(d);

(9) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Nurse Mossiere at Wexford Health of Indiana, LLC with a copy of this order and the amended complaint (ECF 8), pursuant to 28 U.S.C. § 1915(d);

(10) ORDERS the Indiana Department of Correction and Wexford Health of Indiana, LLC to provide the United States Marshal Service with the full name, date of

birth, social security number, last employment date, work location, and last known home address of any defendant that does not waive service, if it has such information; and

(11) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Lieutenant Larry Crittendon, Lieutenant Washington, Officer Ulayi, Officer Thomas, Sergeant Reed, Officer Ross, Officer Walters, Sergeant Guitierez, Lieutenant Palmroy, and Nurse Mossiere to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on July 20, 2020

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT