UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CORY GRAY,

             Plaintiff,

             v.                             CAUSE NO. 3:19-CV-579-JD

LARRY CRITTENDON, et al.,

             Defendants.

OPINION AND ORDER

Cory Gray, a prisoner without a lawyer, is proceeding in this case on five claims.

First, he is proceeding "against Lieutenant Larry Crittendon in his individual capacity

for nominal, compensatory, and punitive damages, for using excessive force against

Cory Gray when he deployed OC spray on him while he lay unconscious in his cell, in

violation of the Eighth Amendment[.]" ECF 9 at 8. Second, he is proceeding "against

Lieutenant Larry Crittendon in his individual capacity for nominal, compensatory, and

punitive damages, for using excessive force against Cory Gray when he threw him to

the floor and dragged him down a flight of stairs, in violation of the Eighth

Amendment[.]" *Id.* Third, he is proceeding "against Lieutenant Larry Crittendon,

Lieutenant Washington, Officer Ulayi, Officer Thomas, and Sergeant Reed in their

individual capacities for nominal, compensatory, and punitive damages, for being

deliberately indifferent to his serious need for medical treatment while he was lying

unconscious in his cell, in violation of the Eighth Amendment[.]" *Id.* Fourth, he is

proceeding against Nurse Jeanine Monnier "in her individual capacity for nominal,

compensatory, and punitive damages, for being deliberately indifferent to his serious

need for medical treatment after he felt like his body was burning from OC spray, in

violation of the Eighth Amendment[.]" *Id.* at 8-9. Fifth, he is proceeding "against

Lieutenant Larry Crittendon, Officer Ross, Officer Walters, Sergeant Guitierez, and

Lieutenant Palmroy in their individual capacities for nominal, compensatory, and

punitive damages, for failing to provide him with adequate clothing, bedding, and

hygiene materials, in violation of the Eighth Amendment[.]" *Id.* at 9.

Lt. Crittendon, Lt. Washington, Sgt. Guitierez, Sgt. Reed, Officer Ross, Officer

Ulayi, Officer Walters, Officer Thomas, and Lt. Palmroy (the "State Defendants") filed a

motion for summary judgment. ECF 160. Nurse Monnier filed a separate motion for

summary judgment. ECF 163. With the motions, the defendants provided Gray the

notice required by N.D. Ind. L.R. 56-1(f). ECF 162, 165. Attached to the notices were

copies of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule

56-1.

Pursuant to Local Rule 56-1(b), a party opposing a summary judgment motion

must, within 28 days after the movant serves the motion, separately file (1) a response

brief; and (2) a Response to Statement of Material Facts, which includes a citation to

evidence supporting each dispute of fact. The court extended Gray's deadline to

respond until May 8, 2023. ECF 174. This deadline passed over a month ago, but Gray

has not responded. Therefore, the court will now rule on the defendants' summary

judgment motions.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

   *Excessive force claims against Lt. Crittendon*

Gray is proceeding against Lt. Crittendon for using excessive force on two occasions: (1) when he deployed OC spray on him while he lay unconscious in his cell; and (2) when he threw him to the floor and dragged him down a flight of stairs after the application of OC spray. Lt. Crittendon argues he did not violate Gray's Eighth Amendment rights because he reasonably applied OC spray to overcome Gray's resistance and was not involved in throwing him to the ground or dragging him down the stairs. ECF 161 at 9-11.

3

Lt. Crittendon provides a copy of an Incident Report Form (ECF 139-1 at 2) and his interrogatory responses (ECF 145), which show the following facts:[1] On June 21, 2019, Lt. Crittendon went to Gray's cell because he was refusing to leave for a scheduled court appearance. ECF 139-1 at 2. When Lt. Crittendon first arrived at Gray's cell, Gray appeared to be having seizure-like symptoms, but then stopped and looked at Lt. Crittendon before putting his head back down. *Id.* At this time, Gray was responsive but refused orders to submit to restraints. *Id.* Lt. Crittendon contacted medical staff and activated a cell extraction team to remove Gray from his cell. *Id.*; ECF 145 at 5. Lt. Crittendon returned to Gray's cell without the extraction team and ordered Gray to get off the floor and be placed in restraints, but Gray again refused. ECF 139-1 at 2. Lt. Crittendon then administered a 2-3 second burst of OC spray into Gray's cell, and Gray responded that he would cuff up. *Id.* Officers Ulayi and Stoll placed Gray in restraints and escorted him to receiving, at which time he became passive resistant. *Id.* Gray was offered a decontamination shower, which he refused. *Id.*; ECF 145 at 7. He was then assessed by Nurse Monnier and placed in a holding cell. *Id.*

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). In order to survive summary judgment, a plaintiff must put forth evidence that "support[s] a reliable inference of wantonness in the infliction of pain." *Id*. at 322. The core requirement for an excessive

---

[1] Because Gray has not responded to the summary judgment motions, the court accepts the facts provided by the defendants as undisputed. See Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion").

force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). In determining whether the intent was malicious, relevant factors include how much force was needed versus how much was actually used; the extent of injury inflicted; whether the force was needed because of a risk to someone's safety; and whether the officers made efforts to limit the severity of the force. *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019).

Here, the undisputed facts show Lt. Crittendon used force against Gray in a good faith effort to restore discipline, not maliciously and sadistically to cause harm. Regarding Lt. Crittendon's application of OC spray, it is undisputed that Gray was refusing orders to submit to restraints and Lt. Crittendon applied OC spray for 2-3 seconds to overcome Gray's resistance without having to resort to a cell extraction. Gray then submitted to restraints, was offered a decontamination shower which he refused, and was assessed by a nurse. These undisputed facts show Lt. Crittendon reasonably applied a small amount of OC spray to overcome Gray's resistance without having to resort to a cell extraction, which would have threatened the safety of both Gray and prison staff. *See Musgrove v. Detella*, 74 F. App'x 641, 646 (7th Cir. 2003) (OC spray "can be used in limited quantities when reasonably necessary to subdue or maintain control over an inmate," and "violates the Eighth Amendment only if it is used 'in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain'") (citing *Soto v. Dickey*, 744 F.2d 1260, 1270–71 (7th Cir. 1984)).

5

Regarding Gray's allegation that Lt. Crittendon threw him to the floor and drug him down the stairs, there is no evidence supporting these allegations. Lt. Crittendon provides undisputed evidence that Gray submitted to restraints after the application of OC spray and was restrained and escorted to receiving by Officers Ulayi and Stoll. Gray provides no evidence that Lt. Crittendon either threw him to the ground or drug him down the stairs, and testified at his deposition he was not sure which correctional officers were present when he was escorted to receiving. ECF 159-1 at 20. Thus, even assuming Gray was thrown to the floor and dragged down the stairs, there is no evidence Lt. Crittendon was involved in or present for any of this conduct.

Based on the undisputed evidence, no reasonable jury could conclude Lt. Crittendon violated Gray's Eighth Amendment rights by applying OC spray, throwing him to the floor, or dragging him down the stairs. Summary judgment is therefore warranted in favor of Lt. Crittendon on these claims.

*Deliberate indifference claim against Lt. Crittendon, Lt. Washington, Officer Ulayi, Officer Thomas, and Sgt. Reed*

Gray is proceeding against Lt. Crittendon, Lt. Washington, Officer Ulayi, Officer Thomas, and Sgt. Reed for being deliberately indifferent to his serious need for medical treatment while he was lying unconscious in his cell. Specifically, Gray alleged in his complaint that these defendants did not notify the medical staff that he had a medical emergency while he was experiencing seizure-like symptoms and lying unconscious in his cell prior to Lt. Crittendon's application of OC spray.

Under the Eighth Amendment, prison officials have a duty to ensure inmates receive constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability for an Eighth Amendment violation, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendants acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

Here, Gray offers no evidence that any defendant was deliberately indifferent to his serious medical need. It is undisputed that Gray appeared to be experiencing seizure-like symptoms and was unresponsive when Lt. Crittendon first arrived at his cell, but then became responsive and refused orders to submit to restraints. Lt. Crittendon then contacted medical staff, removed Gray from his cell, offered him a decontamination shower, and had Nurse Monnier assess him. Gray provides no evidence any defendant denied him medical care, nor does he provide evidence any of the defendants saw him unconscious other than Lt. Crittendon, who alerted medical staff of his condition and had him brought to a nurse. Thus, because there is no

7

evidence by which a reasonable jury could conclude any of the named defendants were deliberately indifferent to Gray's serious medical need, summary judgment is warranted in favor of the defendants on this claim.

### *Deliberate indifference claim against Nurse Monnier*

Gray is proceeding against Nurse Monnier "for being deliberately indifferent to his serious need for medical treatment after he felt like his body was burning from OC spray." Gray testified at his deposition that he was assessed by Nurse Monnier after he was transported to the medical unit, and that Nurse Monnier took his vitals and heard his complaints about a reaction to OC spray. ECF 159-1 at 9. Nurse Monnier represented to Gray that there was nothing she could do for OC spray and that it was up to custody staff to escort him to a decontamination shower. *Id.* at 10. Gray testified that Nurse Monnier did not give him "anything" to deal with the OC spray, but he did not know what Nurse Monnier should have provided him. *Id.* at 11.

As discussed, inmates are entitled to adequate medical care. *Estelle*, 429 U.S. at 104. To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Here, it is undisputed that Nurse Monnier treated Gray after the application of OC spray by taking his vitals and referring him to custody staff for a decontamination shower, but was unable to offer him any other treatment. It is also undisputed Gray was

8

offered a decontamination shower by custody staff, which he refused. Gray testified

that Nurse Monnier should have done something for the burning sensation on his skin,

but he was unsure what sort of treatment Nurse Monnier could have provided other

than referring him for a decontamination shower. Based on the facts in the evidence, no

reasonable jury could conclude that Nurse Monnier's conduct of taking Gray's vitals

and referring him to custody staff for a decontamination shower was "plainly

inappropriate." Summary judgment is therefore warranted in favor of Nurse Monnier

on this claim.

> *Conditions of confinement claim against Lt. Crittendon, Officer Ross, Officer Walters,*
>
> *Sgt. Guitierez, and Lt. Palmroy*

Gray is proceeding against Lt. Crittendon, Officer Ross, Officer Walters, Sgt.

Guitierez, and Lt. Palmroy for failing to provide him with adequate clothing, bedding,

and hygiene materials after the application of OC spray. Specifically, Gray alleged in his

complaint that after he was seen by Nurse Monnier, he was returned to his cell in his

contaminated boxer shorts and his mattress, blankets, and other property had been

removed.

The Eighth Amendment requires prison officials "must provide humane

conditions of confinement . . . and must 'take reasonable measures to guarantee the safety

of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27

(1984)). Thus, inmates are entitled to be provided with adequate food, clothing, shelter,

bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir.

2009). In evaluating a conditions-of-confinement claim, the court conducts an objective

and subjective inquiry. *Farmer*, 511 U.S. at 834. The objective inquiry asks whether "the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quotation marks, brackets, and citation omitted).

Here, Lt. Crittendon states under penalty of perjury that, once Gray was removed from his cell, it was cleaned by porters to remove the OC spray. ECF 145 at 7. Officer Ross, a clothing officer at the prison, states under penalty of perjury that she recalls washing all clothing and blankets that were provided to her. ECF 149 at 5-6. And Sgt. Guitierez states under penalty of perjury that he recalls giving Gray a new mattress and blanket. ECF 151 at 3-4.

Thus, the defendants have provided undisputed evidence that Gray's cell was cleaned after OC spray was deployed, his clothes and blankets were washed, he was offered a decontamination shower, and he was provided a new mattress and blanket. Because there is no evidence the defendants denied Gray access to adequate clothing, bedding, or hygiene materials, no reasonable jury could conclude the defendants denied him the minimal civilized measure of life's necessities. Summary judgment is therefore warranted in favor of the defendants on this claim.

For these reasons, the court:

(1) GRANTS the State Defendants' motion for summary judgment (ECF 160) and Nurse Monnier's motion for summary judgment (ECF 163); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against

   Cory Gray and to close this case.

   SO ORDERED on June 7, 2023

/s/ JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT